JEANETTE MILLARD et al., Appellees, v. NORTHWESTERN MANU-FACTURING COMPANY, Appellant.

EMINENT DOMAIN: Proceedings—Parties—"Owner" Defined. The purchaser of land under an executory contract is an "owner," within the meaning of the Eminent Domain Act.

EMINENT DOMAIN: Compensation—Measure of Damages. The measure of damages for injury resulting from the exercise of the right of eminent domain is the difference in value of the land as a whole immediately before and immediately after the injury occurs. (See Book of Anno., Vol. 1, Sec. 7835, Anno. 56 *et seq.*)

EVIDENCE: Opinion Evidence—Competency of Expert. A witness who is shown to be familiar with the value of lands in the vicinity of the land in question is competent to testify as to the value of the latter.

EMINENT DOMAIN: Compensation—Instructions. It is erroneous for the court to instruct that a condemnation is for the purpose of *appropriating* the land, when the real purpose is to determine compensation for an incidental injury.

TRIAL: Verdict—Form. One form of verdict only need be submitted when but one question is at issue: i. e., damages.

TRIAL: Instructions—Applicability to Evidence. An instruction applicable to no evidence in the record is erroneous.

TRIAL: Instructions—Unwarranted Assumption of Fact. An instruction which assumes the existence of an issuable fact is erroneous.

NEW TRIAL: Newly Discovered Evidence—Abuse of Discretion. The discretion of the court is abused in denying a new trial to a defeated party who diligently sought, during the trial, to learn the

truth as to a material and issuable claim, but was prevented from so doing until after the trial. (See Book of Anno., Vol. 1, Sec. 11550, Anno. 379 *et seq.*)

Headnote 1: 20 C. J. p. 861. Headnote 2: 20 C. J. p. 739. Headnote 3: 22 C. J. p. 588. Headnote 4: 20 C. J. p. 1017. Headnote 5: 20 C. J. p. 1020. Headnote 6: 38 Cyc. p. 1618. Headnote 7: 38 Cyc. p. 1659. Headnote 8: 4 C. J. p. 835.

*Appeal from Webster District Court.*—G. D. THOMPSON, Judge.

### NOVEMBER 24, 1925.

APPEAL from a sheriff's jury award in a condemnation proceeding. The opinion states the facts. Trial to a jury, resulting in a verdict for plaintiff in the sum of $825. From the judgment entered defendant appeals.—*Reversed.*

*Healy & Breen,* for appellant.

*George H. Bradshaw,* for appellees.

DE GRAFF, J.—This cause had its origin in a sheriff's jury award made in a certain condemnation proceeding. In August, 1922, the Northwestern Manufacturing Company commenced the construction of a dam across the Des Moines River in the city of Fort Dodge, for the purpose of impounding and raising the level of the water and thereby creating a reservoir, that the company might have water at all seasons of the year for their condensers. The usual proceedings were taken by the company for condemnation, and a survey was made by its engineer, to determine what property might be affected by overflow. Chapter 363, Code of 1924. There was included in this survey the land in question, described as Lot 18, Block 1, Butler, Carter & Griffin's First Addition to Fort Dodge, Iowa. Apparently at that time the record title to said lot was in Jeanette Millard, and she was properly made a defendant in the condemnation proceeding. Upon the trial of the case at bar it is shown that the plaintiff Bertha Barnhill had purchased the real estate under contract (unrecorded) April 1, 1921, from Mrs. Millard, and was in possession of the property thereafter. It further

appears that the First Trust & Savings Bank of Fort Dodge held the legal title, but merely as a trustee for Mrs. Barnhill, and it claimed no other interest therein.  The sheriff's jury, on July 5, 1923, awarded the record title holder (Jeanette Millard) the sum of $200.  Both she and the company appealed.  Bertha Barnhill then commenced a separate action against the company for damages, so that in fact there were pending three cases involving the same issue.  On September 8, 1924, the trial judge, without objection by anyone, entered upon the docket an order consolidating these causes for trial, and christened the new child by the name and title Jeanette Millard and Bertha Barnhill v. Northwestern Manufacturing Company, a corporation.  Apparently the theory of the court in making the order of consolidation was to merge the rights of Mrs. Millard and Mrs. Barnhill, and, in effect, treat the entrance of the latter with this litigation as a party on the appeal from the original award.

There was but one question involved on the trial in the district court, to wit: the damage, if any, to the property by reason of the construction of the dam.  It is the contention of the company that there is no proven damage whatsoever.  The jury returned a verdict of $825 in favor of the plaintiff, and judgment was entered accordingly.

The primary propositions presented by appellant involve: (1) the competency of the evidence of plaintiff to support the pleaded damages, and (2) the instructions of the court bearing on the issues.

Incidentally, it is claimed by the appellant that there is no proof of ownership in the plaintiff Bertha Barnhill, and that, under our holding in *Waltemeyer v. Wisconsin, I. & N. R. Co.*, 71 Iowa 626, this is an essential element to predicate recovery.  The contention is without merit, and the facts in the cited decision are clearly distinguishable from the instant case.  Mrs. Barnhill is a real party in interest, and as purchaser under contract, must be viewed as an owner, in a proceeding under eminent domain. See *Wolfe v. Iowa R. & L. Co.*, 178 Iowa 1.

1. EMINENT DO-
MAIN: proceed-
ings: parties:
"owner" defined.

Is there any basis to support the further claim of appellant that the record presents no competent evidence of damages?  The burden was on the plaintiff to prove damages.  The

2. EMINENT DO-
MAIN: compen-
sation: measure
of damages.
trial court instructed that the amount of dam-
ages, if any, to which the plaintiff was entitled,
is the difference between the fair market value
of the tract in question "as a whole, immediately before the said
dam was constructed, and the fair and reasonable value after
the said dam was constructed, not taking into consideration any
advantages that may result to the plaintiff on account of the
said improvement."

The rule or measure is stated correctly. *Des Moines Wet
Wash Laundry v. City of Des Moines,* 197 Iowa 1082. The
amount ·of damages in a case of. this kind is largely an approxi-
mation, and we will not substitute our own judgment for that
of the jury. *Kosters v. Sioux County,* 195 Iowa 214.

The primary objection to the competency of the evidence
bearing on the question of damages is, in fact, an indirect chal-
lenge to the competency of the witnesses, including the plaintiff.

3. EVIDENCE:
opinion evidence:
competency of
expert.
These witnesses were not ignorant of land values
in the vicinity of plaintiff's property. The
plaintiff herself had bought and sold another
residence located on the same avenue, within a half block of
her present home. She had made improvements on the prop-
erty in question. The fact that she had paid $2,800 for the.
property about a year and a half before the water of the dam
was impounded, was simply a fact to be considered by the jury
in relation to her opinion evidence as to its current value. An-
other witness, Sandeline, was a barber 38 years old, who had
lived in Fort Dodge all his life. He testified that he was famil-
iar with the values of property in the immediate neighborhood,
and had owned property within a block of the Barnhill home-
stead. His barber shop was located on the river bank. Another
witness, a bookkeeper named Frantz, was called by plaintiff on
the question of value. He had lived within a block of the Barn-
hill home for several years, and was a property owner in the
neighborhood. He was familiar with the exchange of real
estate in the neighborhood. Other witnesses—one.a printer, one
a brother-in-law, and one the husband. of plaintiff—were of-
fered, and their proffered testimony was subject to similar ob-
jections, which were overruled..

The general rule is that, when a party has stated· his knowl-

edge of the value of the class of property to which his testimony relates, he is privileged to express his opinion. If we apply this test to the evidence to which appellant's objections relate, the opinions expressed were proper for the consideration of the jury. See *Ball v. Keokuk & N. W. R. Co.*, 74 Iowa 132.

The occupation or business of a witness offering opinion evidence does not *per se* disqualify him, nor does relationship by affinity or consanguinity to the property owner make either the witness or his evidence subject to legal objection.

We now pass to the assigned errors based on the instructions given by the court. May appellant justly complain of the statement of the issues by the trial court? It is said in the first

4. EMINENT DO-MAIN: compensation: instructions.

instruction, referring to the original condemnation proceeding, that "the defendant condemns said described real estate for the purpose of a site for the erection of a dam," and that "the sole question which you are called upon to determine in this case is the amount of damages which the plaintiff has sustained by reason of the appropriation of said land for said purpose." Furthermore, in the same instruction the Fort Dodge Gas & Electric Company is mentioned as a party-defendant in the condemnation proceeding, without any reference to the fact that said company, by order of court, previously entered, had been dismissed, and that no right of action in the instant case is claimed against said company. The Fort Dodge Gas & Electric Company should not have been named, or if named in stating the history of the case, the fact of its elimination should have been explained to the jury. It is quite apparent, also, that the defendant Northwestern Manufacturing Company was not attempting to take this property as a site for a dam. The evidence shows without dispute that the property is quite a distance from the dam, and has no connection whatsoever with the site.

The defendant-appellant contended at all times, and now contends, that the property of plaintiff was not damaged, and that no award should have been made against the company.

5. TRIAL: verdict: form.

The commencement of a condemnation proceeding impliedly admits the taking or the contemplated taking of the property in question.

There is an affirmative showing in this case of the building of the dam, and some evidence to warrant the jury in finding that the property of plaintiff was affected by the raising of the water level. With this view of the situation, but one form of verdict was submitted to the jury. We discover no basis for criticism in this particular.

In Instruction No. 2 the jury was again told that the damages, if any, which the plaintiff sustained must be "by reason of the land so appropriated by the defendants."

In Instruction No. 4 the jury was told that, in ascertaining the market value of the property in question, they were privileged to consider the property with regard to "its locality with respect to business and demand for property at that time, and any increase or development thereof that might have been reasonably expected in the immediate future at that time." We discover no evidence in this record to warrant the instruction with reference to what the future of this property might be in respect to business, or the future demand or value of this property for business purposes. Instructions must have a relation to the record facts, that the jury may not indulge in conjecture and speculation.

6. TRIAL: instructions: applicability to evidence.

In Instruction No. 5 the jury was told that:

"It is conceded by the parties to this suit that the title of the plaintiff of said lots goes only to the high-water mark of the river."

The boundary line of the lot was not only not conceded by the defendant, but the contrary fact is specifically disclosed by the record. During the trial, the presiding judge said to counsel:

"I think there is no question, anyway, but what this tract of land that is under consideration in this case was one tract, from the street to the high-water mark."

Thereupon, counsel for the defendant said:

"There is. We don't concede that. This is platted property,—not governmental property."

Though we do not pass upon the question whether the evidence in this case is sufficient to enable the jury to determine the high-water mark, as correctly defined by the court, the evi-

7. TRIAL: instruc-
tions: unwar-
ranted assump-
tion of fact.

dence discloses that the recorded plat of the Butler, Carter & Griffin's First Addition to the city of Fort Dodge shows, according to the testimony of the city engineer, that Lot 18 has a depth of 140 feet. Our criticism is, under this record, that the court was not justified in instructing the jury that plaintiff's property extended to the high-water mark as a conceded fact.

One further assigned error may be noted. In the defendant's motion for new trial, an affidavit was filed to support the claim that newly discovered evidence was in the possession of the defendant that would have a material bearing on one element of damage claimed by the plaintiff.

8. NEW TRIAL:
newly discov-
ered evidence:
abuse of dis-
cretion.

Mrs. Barnhill's testimony featured the overflow of a sewer into the basement of her property by reason of the fact that the sewer worked properly before the construction of the dam, and after its construction, the water was raised so as to back up in the sewer, causing the basement to be flooded during heavy rains. The defendant company had no knowledge of the outlet of a private sewer at the time of the trial, and assumed that the testimony showing that the contents emptied above the dam was true. Subsequent to the trial, it was discovered that the sewer complained of emptied into a city sanitary sewer, which had its outlet below the dam. It is now urged that the erection of the dam and the alleged increase of the water level had no causal relation to the damage asserted by the plaintiff in this particular.

It is further shown that the defendant company made every reasonable effort during the trial to discover the true situation, and failed. Without further comment, we hold that the newly discovered evidence was a sufficient warrant for the granting of a new trial. The evidence constituted a material element in the quantum of damages, if any, that were allowable by the jury.

For the reasons herein set forth, the judgment entered is— *Reversed.*

FAVILLE, C. J., and STEVENS, VERMILION, and ALBERT, JJ., concur.