BLANCHE O. FORTMAN, Administratrix, Appellant, v. M. A. Mc-BRIDE, Appellee.

No. 43043.

NOVEMBER 12, 1935.

REHEARING DENIED FEBRUARY 21, 1936.

Ralph N. Lynch, for appellant.

Bradshaw, Fowler, Proctor & Fairgrave, for appellee.

POWERS, J.—Plaintiff's decedent was a taxicab driver, 33 years of age. In going to and from his home to his place of business, he traveled over Southwest Twenty-first street in the city of Des Moines. This street is a heavy traffic thoroughfare leading to the airport and to the army post. It runs north and south. The highway is paved with brick; the paved portion being 20 feet and 3 inches wide. There are dirt shoulders on each side of the road. Plaintiff's decedent, M. E. Fortman, was driving south on this highway in a Chevrolet coupé on his way home from work on the evening of November 22, 1934. After crossing the tracks of the Burlington Railroad on this highway, there is a hill or series of hills leading to higher ground. The ascent immediately south of the tracks is somewhat pronounced. Thereafter it is more gradual with an intervening depression until the top of the hill is reached several hundred feet south of the tracks. As Fortman approached the top of the hill, he ran out of gas, and his car stopped. Shortly thereafter a car driven by one Dusenburg approached him from the south and passed him on the east or right-hand side of the paving.

As the Dusenburg car got even with Fortman's car, it stopped, and Dusenburg inquired as to whether he could render any assistance. At the time, Fortman was standing at the front end of his car. The car itself was then almost crosswise on the west half of the paving, the hind wheels were at the edge of the paving, the front of the car at the center, and headed a little southeast. Fortman explained to Dusenburg that he had run out of gas and that he was pushing his car back into a private drive which led off the paving to the west immediately behind where the hind wheels of his car then were, and that when he got it back there he could cramp his wheels to the north and let his car coast down hill and across the railroad tracks to the north and to a service station beyond. Dusenburg then drove on. When he got about seventy-five feet from the Fortman car, he met and passed the car driven by the defendant, McBride, coming up the hill at a speed which he estimates to have been about thirty-five miles per hour. The lights on the McBride car were lit. Dusenburg had his lights on. Dusenburg recognized the possibilities of danger in the situation and tried to warn McBride by sounding his horn. McBride did not see Fortman's car standing crosswise in the road ahead of him until he had passed the Dusenburg car. He testified that he could not see it because of the glare of the lights of the Dusenburg car. As soon as the presence of the Fortman car standing crosswise on his half of the paving was discovered, McBride applied his brakes and attempted to stop and attempted to turn to the left, according to his testimony, to avoid the Fortman car. The paving, however, was covered with ice, so that he was unable to turn his car or stop it in time to avoid colliding with the Fortman car. Fortman, at the time that Dusenburg talked to him, was at the front of his car. He seems thereafter to have gone to the left side, or north side, of his car and taken hold of the body of the car in an effort to push it backwards. When the defendant, McBride, saw him, he was standing at the north side of his car with his arms outstretched against the body of the car. He remained in this position until the cars collided. The McBride car seems not to have been going very fast at the time of the collision. Practically the only injury to the cars was to the right front fender of the McBride car and the left hind fender of Fortman's car. Fortman was pinned between the two cars and sustained internal injuries from which he subsequently

and some weeks later died. The accident happened between dusk and dark, and the evidence fails to show that there were any lights on the Fortman car.

At the close of all the evidence, the court sustained a motion to direct a verdict for the defendant. Two questions are raised by the motion: First, whether there is evidence of negligence on the part of the defendant sufficient to carry that issue to the jury; and, second, whether there is sufficient evidence of freedom from contributory negligence on the part of plaintiff's decedent to carry that issue to the jury. We shall have occasion to consider only the question of contributory negligence, as it is decisive of this appeal.

Under our practice, the burden is upon the plaintiff to show his decedent was free from contributory negligence. The question of the sufficiency of the evidence to carry that issue to the jury is always a difficult one; this for the very obvious reason that negligence being a lack of ordinary care has in it an element of fact and cannot ordinarily be determined as a legal proposition. There are, of course, situations where it can be said definitely and as a matter of law that the plaintiff's doing certain things or his failure to do certain things establishes contributory negligence. For example, when a traveler approaches a railroad crossing and has notice of the existence of the crossing, he knows it is a place of danger. His failure to look and listen for approaching trains may very properly be said to be contributory negligence as a matter of law. But in such a situation we are dealing with circumstances that are fixed, and the danger is constant. A somewhat similar situation exists when there are intersecting highways. The situation becomes much more difficult, however, when we are dealing with the obligation of travelers to use ordinary care on a highway at a place other than an intersection, whether such travelers be motorists or pedestrians, because the circumstances are so varied that it is difficult to lay down any definite rule and say that the performance of certain acts or the omission of certain acts constitutes contributory negligence, except, of course, where the act or the omission is a violation of a duty imposed by statute or ordinance. All prior holdings of the court, therefore, as to what does or does not constitute contributory negligence on the part of a traveler on the highway in cases involving an automobile, must be read in connection with the circumstances of

the particular case. The same conduct under different circumstances might lead to an entirely different result.

■■■ In the case at bar, Fortman had the right to use the highway in the way that he was using it. Contributory negligence, as a matter of law, is not established by the fact that his car was stopped because his gas supply was exhausted, nor by the fact that he was pushing his car backward into a private drive to turn it around. But in that use, as in any use of the highway, he was required to exercise ordinary care for his own safety. Ordinary care is a flexible term. It varies with the circumstances of the case. The care which a person must exercise to constitute ordinary care increases with the known danger which inheres in the situation in which he finds himself. Ordinary care is the care which a person of ordinary caution and prudence would exercise under the circumstances. If reasonable minds may differ on the question as to whether the care used measures up to that standard, the question is for the jury.

What were some of the important circumstances here which were known by plaintiff's decedent and what precaution did he take for his own safety? He traveled this street regularly. He knew that it was a heavy traffic street. He knew about the hill and the contour of the ground. He knew that the paving was covered with ice, for he was out on it and pushing his car on it. He knew that the sun had long since set and that it was between dusk and dark. He had his car crosswise on the paving so that it entirely blocked the west half of the paving and would be directly in the path of a car approaching from the north. He knew his car was without lights. He was standing at the front end of his car only a few seconds before the injury was received. He walked along the north side of the car where cars approaching from the north with their lights on were visible. He did that at a time when the east half of the paving was occupied by the Dusenberg car going north with its lights shining. Under these circumstances, he deliberately turned his back upon on-coming traffic and with his arms spread out gave his attention exclusively to pushing or maneuvering his car, and remained in that position in the face of the on-coming car with its headlights shining and without making any effort to protect himself.

It thus appears that in a situation which was obviously dangerous, particularly in view of the ice on the pavement and

the presence of the Dusenburg car, plaintiff's decedent took no precautions whatever for his own safety. It does not appear that he exercised any care for his own safety, much less ordinary care. He appears to have been utterly oblivious of the obvious possibility (which almost amounted to a certainty on this heavy traffic thoroughfare) that a car would approach from the north, and that, in view of the condition of the paving, it would have difficulty in avoiding him.

Appellant argues that his decedent was not required to anticipate negligence on the part of defendant-appellee. Abstractly, the statement is true and frequently occurs in the cases dealing with this subject. It is not, in itself, very helpful as a guide, however. If we pursue it to the extent which appellant urges, it would mean that a plaintiff should never be found guilty of contributory negligence unless the defendant was first found to be free from negligence. This, of course, would destroy the doctrine entirely. The very term ''contributory negligence'' presupposes that there was negligence on the part of the defendant causing the damage, and that there was also negligence on the part of the plaintiff which contributed. If the plaintiff alone were negligent, such negligence would be the sole proximate cause of the injury, not merely a ''contributing'' cause. The real test is whether the situation is an obviously dangerous one. If it is, plaintiff must exercise care for his own safety. He cannot rely entirely upon the care of the other. If both are negligent and injury results therefrom, neither can recover. So, while we have said that plaintiff need not anticipate negligence on the part of the defendant, we have generally added immediately, ''but plaintiff must exercise ordinary care.'' See Lindloff v. Duecker, 217 Iowa 326, 251 N. W. 698. The two statements must be taken together, the last as a modification of the first. It is not claimed the speed at which defendant was driving was in itself unlawful or unusual or such as might not reasonably be anticipated. The situation in that respect was not substantially different than it would have been on a highway in the country.

A brief reference to some of our former holdings may be helpful. In the case of Lindloff v. Duecker, 217 Iowa 326, 251 N. W. 698, a man who was walking in the center of a paved highway 18 feet wide and between the two black lines placed thereon for the guidance of automobile traffic was denied re-

covery on the ground of contributory negligence when hit by a passing motorcar. In that case, as in the one at bar, the vision of the driver of the car which struck the pedestrian was affected by the lights of a car coming from the opposite direction and which was passed just prior to the accident. The court in that case recognized and applied the principle that one who takes an obviously dangerous position on the highway must exercise a degree of care commensurate with the danger. The case in many of its aspects is closely analogous to the one at bar. See, also, Kessel v. Hunt, 215 Iowa 117, 244 N. W. 714; Taylor v. Wistey, 218 Iowa 785, 254 N. W. 50; Norris v. Lough, 217 Iowa 362, 251 N. W. 646.

Appellant contends that the case at bar is ruled by our holding in Hanson v. Aldrich, 199 Iowa 168, 201 N. W. 778, where this court held that a man who was run down on the highway while attempting to stop an approaching motorcar was not guilty of contributory negligence as a matter of law. The cases are alike only in that the injured person was standing on the highway when struck in both cases. The attending circumstances are entirely different. In the Hanson case the man in the road was constantly waving his hands to attract attention. He was trying to warn the driver of the on-coming car of the presence of his own car on the highway immediately back of him. There was no interference with the vision of the on-coming car because of a car approaching from the opposite direction. The man in the road was clearly visible to the driver of the on-coming car. There was a good graveled road 27 feet wide. The on-coming car could have easily stopped or turned out to avoid him. No effort was made to stop it or turn it aside. On the contrary, its speed was increased. The only explanation was that the driver thought "it was a holdup". The key to the holding is in the statement of the court that the plaintiff in that case, under the circumstances, "was in a reasonably safe position". That cannot be said of plaintiff's decedent in the case at bar.

We see no escape from the conclusion in this case that the situation was an obviously dangerous one, and that the decedent, in taking the position which he did on the north side of his car with his back to approaching traffic and in failing to keep a lookout for approaching cars, under the circumstances, was not in the exercise of ordinary care for his own safety. There was

1010

no evidence from which a jury could find that the decedent was free from contributory negligence.

■■■ Complaint is also made that the trial court erred in excluding certain offered testimony as to a statement made by decedent to his wife while at the hospital about an hour after his injuries were received to the effect that the car came so fast he could not get out of the way. Trial courts are allowed considerable discretion in passing on the admissibility of such statements. Christopherson v. Chicago, M. & St. P. R. Co., 135 Iowa 409, 109 N. W. 1077, 124 Am. St. Rep. 284. Deceased seems to have been conscious during the entire interval between his injury and the making of this statement. This particular statement, if received, would have little probative force. There was evidence that deceased looked backwards over his shoulder an instant before the collision. The circumstances would indicate that he paid no attention to the approaching car until he discovered that it was going to run into him. It was then too late. The statement would naturally refer to the time after that discovery. The result in this case could not have been different if the statement had been received.

It follows that the judgment of the trial court must be affirmed.—Affirmed.

KINTZINGER, C. J., and ALBERT, MITCHELL, ANDERSON, PARSONS, and HAMILTON, JJ., concur.