HAROLD CLARK, appellant, v. R. D. UMBARGER, appellee.

No. 48890.

(Reported in 75 N.W.2d 243)

March 6, 1956.

Rehearing Denied May 11, 1956.

Mason & Stone, of Mason City, for appellant.

Westfall, Laird & Burington, of Mason City, for appellee.

Peterson, J.—This is an action for damages suffered by plaintiff as a result of the automobile driven by defendant running into the rear of plaintiff's automobile at about 11:25, on the night of December 17, 1952. Plaintiff was stopped on Highway No. 65 where same enters the city of Mason City from the south. His lights, front and rear, had failed. The jury rendered a verdict in favor of plaintiff in the amount of $10,000. Motion by defendant for judgment notwithstanding the verdict was sustained. The verdict was set aside by the trial court on the one ground that plaintiff was guilty of contributory negligence as a matter of law. From this ruling plaintiff appeals.

Harold Clark is a resident of Mason City and is 37 years of age. He is a carpenter and cement worker. Upon the evening of December 17, 1952, he worked until eight o'clock. He ate his supper at a café and at about nine o'clock he went to Blue Ribbon tavern. He was there visiting with friends for about two hours and during that period drank from five to seven glasses of beer. At the tavern he met a man by the name of Hagen who asked him to take him to a farm south of Mason City where he worked. Before starting on the trip he stopped at Plaza Lunch and had a cup of coffee and sandwich. Highway No. 65 is known as Federal Avenue in Mason City. At the place involved it is 24 feet and 4 inches in width between curbs. When plaintiff had proceeded south on this highway some distance and was out in the country section and away from the built-up section of the city, although still within the city limits, the lighting system on his automobile failed. Plaintiff testified he then drove his car within 8 or 10 inches from the curb and stopped. There is conflict in the evidence as to where the car was stopped, but the verdict of the jury indicates they sustained plaintiff. The curb was 4 to 6 inches in height, and the shoulder was covered with snow.

He had a flashlight in his glove compartment and he inspected the fuse to see if it was burned out. He found it was. He then lifted up the hood of his car to see if he could find an exposed wire causing the short, and he did. He had tape in his car and he taped up the exposed portion of the wire. He also had a new fuse in the car and he proceeded to put the new fuse in place. To do this he was sitting on the cushion of the front seat with his head protruding down under the dashboard and his feet extending outside of the car through the open left front door. Hagen was in the car, but was intoxicated and of no assistance.

It was at this point that the impact occurred between defendant's and plaintiff's cars. The time involved in the repair procedure was between five and ten minutes. Defendant was a police officer for the city of Mason City and he was driving a police car. During the time plaintiff was making the repairs no cars had passed in either direction. Immediately prior to the accident a man by the name of Dean Pierce was driving south

on Highway No. 65 at a rate of between fifteen to thirty miles per hour. Some distance north of plaintiff's car defendant passed the Pierce car. Defendant testified he had dimmed his lights in passing the Pierce car, and he did not think he had raised them again prior to the impact. He was traveling at 45 m.p.h. or more. He testified that at a point about 125 feet north of plaintiff's car he saw the car. He applied his brakes about 80 feet north of plaintiff's car. This fact is established by the skid marks as measured by the Chief of Police the next morning. The skid marks also show that defendant was driving about four feet from the curb during all the distance, until he struck plaintiff's car in the rear. Plaintiff's car was a 1939 Mercury and it was almost wrecked, selling afterward for $25 as junk. The front of defendant's car was badly damaged.

Plaintiff was severely injured and was taken to the hospital. He was in the hospital about two weeks and was at home for more than two months and thereafter worked part time. His doctor testified that he was permanently incapacitated to the extent of 25%.

The able trial court submitted the case to the jury on very carefully drawn and complete instructions. He instructed clearly and at length with reference to contributory negligence.

Defendant filed motion for new trial, which was overruled. He also filed motion for judgment notwithstanding the verdict. The trial court sustained the motion on one ground only: that plaintiff was guilty of contributory negligence as a matter of law.

There is only one question in the case: whether or not the trial court erred in sustaining the motion.

Three matters should be analyzed in considering the question of submitting the case to the jury as to contributory negligence:

First. The evidence and physical facts should be construed favorably to submission.

Second. Consideration of the effect of sections 321.354 and 321.355, Code of Iowa, 1954, are for the jury.

Third. Did plaintiff act as a reasonably prudent man would act under the same circumstances?

■■ I. There have been numerous automobile cases where the question of contributory negligence is involved. In many cases the trial court has properly directed a verdict. Oftentimes the line between the matter of submission to the jury or directing a verdict is a narrow line. Doubts should be resolved in favor of submission to the jury. It has been held in many cases that on the question of submission the testimony and physical facts must be analyzed by the trial court on a basis most favorable to plaintiff. Swan v. Dailey-Luce Auto Co., 225 Iowa 89, 93, 277 N.W. 580, 281 N.W. 504; Holderman v. Witmer, 166 Iowa 406, 409, 147 N.W. 926; Lorimer v. Hutchinson Ice Cream Co., 216 Iowa 384, 390, 249 N.W. 220; Robertson v. Carlgren, 211 Iowa 963, 972, 234 N.W. 824; Rhinehart v. Shambaugh, 230 Iowa 788, 790, 298 N.W. 876; Lawson v. Fordyce, 234 Iowa 632, 12 N.W.2d 301.

II. Referring to sections 321.354 and 321.355, the question arises as to whether in this case there was an exception under the latter section. The pertinent portions of section 321.354 are as follows: "Upon any highway outside of a business or residence district no person shall stop, park, or leave standing any vehicle, whether attended or unattended, upon the paved or improved or main traveled part of the highway when it is practical to stop, park, or so leave such vehicle off such part of said highway, but in every event a clear and unobstructed width of at least twenty feet of such part of the highway opposite such standing vehicle shall be left for the free passage of other vehicles and a clear view of such stopped vehicle be available from a distance of two hundred feet in each direction upon such highway; * * *."

Section 321.355 is as follows: "Section 321.354 shall not apply to the driver of any vehicle which is disabled while on the paved or improved or main traveled portion of a highway in such manner and to such extent that it is impossible to avoid stopping and temporarily leaving such disabled vehicle in such position."

There are many decisions of this court that the questions of violation and exception thereto, if any, under the above sections, are questions for the jury. Smith v. Pust, 232 Iowa 1194, 6 N.W.2d 315; Uhlenhopp v. Steege, 233 Iowa 368, 7 N.W.2d 195;

Hayungs v. Falk, 238 Iowa 285, 27 N.W.2d 15; Boger v. Kellner, 239 Iowa 1189, 33 N.W.2d 369; Tuhn v. Clark, 241 Iowa 441, 41 N.W.2d 13, 15 A. L. R.2d 903; Heidebrink v. Messinger, 241 Iowa 1188, 44 N.W.2d 713.

On the question of plaintiff leaving the highway, after the lights failed, the witness Pierce testified: "It appeared to me that a car going at a slow rate of speed could not have been pulled up on that shoulder." The court instructed carefully on this feature of the case, and with this evidence the jury could find it impossible or impracticable to leave the highway.

III.  As a general statement on submission. of automobile cases to the jury, we quote the following provisions from Cyclopedia of Automobile Law and Practice by Blashfield, sections 6618 and 6620:

■  "Ordinarily, the question of contributory negligence is for the jury.

"Where there is any dispute, based on credible evidence, as to the controlling facts on the question of whether one injured in an automobile accident has been guilty of negligence contributing to such injury, or where reasonable men might honestly or with equal plausibility draw from the established facts different conclusions, one of which would make the injured person guilty of negligence and the other indicate that he was in the exercise of due care, the question is for the jury; this being so, even though plaintiff's evidence does not conclusively show freedom from contributory negligence. * * *.

"The rule stated in section 6618, applicable generally on the question of contributory negligence, has caused the courts to submit to the jury the matter of a motorist's contributory negligence where a collision took place upon a curve; where a motorist approached the top of a hill without sounding his horn as a statute required; where a truck without taillights was parked on a highway on a dark and rainy night and was run into by a passing motorist; where a motorist failed to get all the wheels of his automobile off the pavement when he stopped to look at the tires; and where a car skidded to the wrong side of the street and caused an accident. * * *."

944

■ There are many decisions which hold that where reasonable minds may reach different conclusions from the facts presented, the case should be submitted to the jury. Short v. Powell, 228 Iowa 333, 335, 291 N.W. 406; Lathrop v. Knight, 230 Iowa 272, 276, 297 N.W. 291; Wilkinson v. Queal Lumber Co., 203 Iowa 476, 480, 212 N.W. 682; Hanson v. Manning, 213 Iowa 625, 630, 239 N.W. 793; Roberts v. Hennessey, 191 Iowa 86, 103, 181 N.W. 798; Lawson v. Fordyce, supra.

The question of keeping a lookout under the circumstances of plaintiff's situation has been under consideration in several cases. In this case defendant saw the parked car 125 feet before he collided with it. In the case of Engle v. Nelson, 220 Iowa 771, 777, 263 N.W. 505, 509, the court said as follows:

■ "It is elementary, and we have frequently held, that a violation of a statutory requirement is immaterial if such violation was not a direct or contributing cause of the injury. In the Ryan case, supra [Ryan v. Trenkle, 203 Iowa 443, 445, 212 N.W. 888], we said: 'Was the failure, if any, of the driver of the automobile to give the statutory or other warning signals a proximate cause of the injury claimed? It is elementary that negligence may not be predicated on the failure to give signals when such failure in no wise can be said to be the proximate cause of the injury. * * * A person who has knowledge of the presence of a train or auto which imparts to him the very thing that a signal was intended to impart cannot, under ordinary circumstances, predicate negligence on the failure to give a signal.'

"In the Scoville case, supra [Scoville v. Clear Lake Bakery, 213 Iowa 534, 539, 239 N.W. 110], we said: 'The only function to be served by lights, or by an attendant, would be to warn travelers of the presence of the obstruction in the road. Such ground of negligence could not be available to a plaintiff, who saw the truck for hundreds of feet in his approach thereto, and had no need of further warning.' "

In case of Hanson v. Aldrich, 199 Iowa 168, 170, 201 N.W. 778, 779, the plaintiff's car had become disabled. Plaintiff saw defendant's car coming in the distance and he stepped back 12 to 15 feet in the rear of his own car and waved his hands. Defend-

ant did not stop or slow up, but ran into plaintiff and injured him seriously. The only question in the case was whether or not plaintiff was guilty of contributory negligence. We quote: "The evidence shows that the defendant saw the plaintiff and his car at such a distance that the collision could, in all probability, have been averted. The lights on the Aldrich car were in good condition, and disclosed objects in its pathway at least 75 feet in advance of his car. Plaintiff could not know that defendant had no intention of stopping or turning to the left. Plaintiff had reason to think that he was within a zone of reasonable safety. Whether or not plaintiff had time to step aside after he discovered that defendant was not going to turn was a question for the jury to determine, under the circumstances."

The question of submitting contributory negligence to the jury in cases somewhat similar to this case has been before this court many times, and particularly in three recent cases: Boger v. Kellner, Tuhn v. Clark and Heidebrink v. Messinger, all supra.

In Boger v. Kellner, supra, the defendant had stopped his car on the pavement because of ice on the windshield. He heard plaintiff's car approaching. He ran back of his car to flag down plaintiff's car, but plaintiff struck the rear of defendant's car. The situation of the parties is in reverse, but the question at issue is the same. It was held that the question of defendant's contributory negligence was for the jury.

In Tuhn v. Clark, supra, defendant stopped his car on the highway to remove ice from the windshield as it was impossible for him to see through the windshield. Plaintiff struck the rear of defendant's car about a minute after he had stepped out of it. This case is also in reverse as to the parties, but the trial court submitted the case to the jury and this court affirmed.

In the case of Heidebrink v. Messinger, supra, decided in 1950, plaintiff's motor stalled and he stopped on the highway. Before he could get his car started it was struck by defendant's car in the rear. There was only one question in the case, and that was the same as the question we have in this case, as to whether or not the trial court should have directed a verdict for defendants. The trial court submitted the case to the jury and this court affirmed.

In case of Smith v. Darling & Co., 244 Iowa 133, 144, 56 N.W.2d 47, 53, this court cited with approval the following statement concerning contributory negligence being a question for the jury: "It is perhaps unnecessary to repeat again this language from Huffman v. King, 222 Iowa 150, 154, 268 N.W. 144, 147, 'It is the well-settled rule of law in this state that if there is any evidence tending to establish plaintiff's freedom from contributory negligence, that question is one for the jury. [Citations.]' See also Pierce v. Dencker, 229 Iowa 479, 484, 294 N.W. 781, 783."

■ The question of contributory negligence is a question of whether or not plaintiff acted as a reasonably prudent man would act under the circumstances with which he was confronted. Plaintiff's lighting system failed. What would be the acts of a prudent man under such conditions? He knew he had the tape in the car and he knew he had a fuse in the car. He was stopped on a main highway, but he was in the country, and knew he was removed from heavy city traffic. It was about 11:30 at night when normally traffic would be slow in any location. The paving was dry. His car was reasonably close to the right curb, as shown by his testimony and the physical facts. Plaintiff was a carpenter and cement worker and in the course of his employment would be in contact with machinery and mechanics. Having the tape and the fuse in the car the jury could find, and did find, that it was prudent for him to make the mechanical repair, rather than to act in some other manner.

■ IV. Counsel for appellee, in addition to their argument as to the question of directing a verdict against plaintiff on the basis of contributory negligence, also raise specifically and separately the question of whether plaintiff was under an emergency. We hold that this matter is carefully covered in the instructions of the court. On the question of defendant's negligence the court instructed in detail concerning the matter of emergency and the effect of same. Defendant had the benefit of such instructions. The court instructed similarly with reference to plaintiff. By these instructions as to emergency this question was fully submitted to the jury.

V. The instructions of the court were very carefully pre-

pared and were complete and comprehensive as to every angle of the case. Under instructions 11 and 12 he outlined to the jury all matters which they should take into consideration on the question of contributory negligence of plaintiff. The submission of the case to the jury under these instructions was correct.

Motion for new trial was filed by defendant and same was overruled. The case is concluded as far as trial is concerned. The only remaining function of the trial court, in view of this reversal, is to reinstate the judgment as originally entered on the verdict of the jury.—Reversed.

All JUSTICES concur.